Filed 5/23/19 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON A BERG,<br><br>    Defendant and Appellant. | D073749<br><br><br>(Super. Ct. Nos. SCD123437,<br> HC21858)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 29, 2019, be modified as

follows:

1.  On page 26, after the first sentence of the first full paragraph ending in "did not

change until January 1, 2018," add a footnote as follows:

> 23.    In a petition for hearing, the People contend that *People v.
> Hargis* (2019) 33 Cal.App.5th 199 (*Hargis*) supports the conclusion
> that the trial court in this case "acted within its discretion by
> considering a new law."  (Capitalization & boldface omitted.)  We
> disagree.  In *Hargis*, the Court of Appeal considered the effect of
> two changes in the law pertaining to the scope of a trial court's
> jurisdiction on remand from a prior appellate opinion.  First, the
> *Hargis* court concluded that a trial court had jurisdiction on remand

to consider the effect of the enactment of Proposition 57, which had become effective *prior* to finality of the prior appeal. (*Hargis*, *supra*, at p. 207.) In contrast, in this case, as stated in the text, Senate Bill No. 394 did not become effective until well *after* the finality of our prior opinion that resulted in an unqualified affirmance of the trial court's prior order. Thus, this aspect of *Hargis* is clearly distinguishable.

With respect to the other change in the law at issue in *Hargis*, the enactment of Senate Bill No. 620 which permits a trial court the discretion to strike a firearm enhancement, the *Hargis* court concluded that this law would *not* be given retroactive effect in view of the fact that it had become effective after finality of the prior appeal and the Legislature had not intended for the statute to apply retroactively to final cases. (*Hargis*, *supra*, 33 Cal.App.5th at p. 209.) While the *Hargis* court concluded that the defendant could benefit from Senate Bill No. 620 if the trial court were to conclude that he was entitled to juvenile disposition under Proposition 57, this was because the change in the law "expressly extended the authority of a trial court to strike or dismiss a [firearm] enhancement 'to any resentencing,' " and the potential subsequent juvenile disposition would be "akin to a resentencing." (*Hargis*, *supra*, at p. 210.) In this case, the People point to nothing indicating that the Legislature intended for Senate Bill No. 394 to apply to final habeas orders granting resentencing, and there is no future proceeding akin to the potential juvenile disposition at issue in *Hargis* to which the change in the law might be said to operate.

2. On page 26, renumber footnote 23 as footnote 24.

The petition for rehearing is denied.

There is no change in the judgment.

NARES, Acting P. J.

Copies to: All parties

2

Filed 4/29/19 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON A. BERG,<br><br>    Defendant and Appellant. | D073749<br><br><br>(Super. Ct. Nos. SCD123437,<br>HC21858) |

APPEAL from an order of the Superior Court of San Diego County,

Charles G. Rogers, Judge.  Reversed.

Angela Bartosik, Chief Deputy Public Defender, Whitney N. Antrim and Troy A.

Britt, Deputy Public Defenders, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Matthew C.

Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

I.

INTRODUCTION

In *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 (*Griset II*), the California Supreme Court explained, "An unqualified affirmance 'ordinarily sustains the judgment and ends the litigation.' " The *Griset II* court applied this principle in concluding that a trial court lacked jurisdiction, after the unqualified affirmance of its prior judgment, to consider a party's renewed motion for summary judgment based on a change in the law. (*Id.* at pp. 694–695, 701.) The *Griset II* court ruled that the trial court's "later judgment [on the renewed motion for summary judgment] was void insofar as it encompassed or rested upon a redetermination of the merits of the litigation." (*Id.* at p. 701.)

In this case, the trial court granted petitioner Jason A. Berg's petition for writ of habeas corpus, and we issued an opinion in a prior appeal that constituted an "unqualified affirmance" (*Griset II*, *supra*, 25 Cal.4th at p. 701) of the order granting the petition. (*In re Berg* (2016) 247 Cal.App.4th 418 (*Berg I*), review granted July 27, 2016, S235277 briefing deferred pursuant to Cal. Rules of Court, rule 8.512(d)(2), review dismissed July 26, 2017.) After the issuance of the remittitur in *Berg I*,[1] the People filed a pleading in the trial court styled as a "Request to Reconsider and Vacate Previous Order." (Some

---

1    We take judicial notice of our opinion in *Berg I* and the record from that appeal, sua sponte. (See Evid. Code, §§ 459 ["The reviewing court may take judicial notice of any matter specified in [Evidence Code] Section 452"], 452, subd. (d) [permitting a court to take judicial notice of the "[r]ecords of (1) any court of this state"].)

2

capitalization omitted.)  In their request, the People asked the court to vacate its prior order granting Berg's petition for writ of habeas corpus in light of an anticipated change in the law.  In January 2018, after the new law became effective, the trial court granted the People's request, vacated its prior order granting Berg's petition for writ of habeas corpus, and issued a new order denying the petition.

In his opening brief, Berg claims that the trial court lacked jurisdiction to vacate its prior order granting his petition for writ of habeas corpus, among other contentions. We asked the parties to file supplemental letter briefs addressing the following question:

> "What effect, if any, does [*Griset II*, *supra*,] 25 Cal.4th 688, have on the issues in this case?  (See *id.* at p. 701 [trial court did 'not have jurisdiction to reopen or retry the case' after 'unqualified affirmance' of prior judgment].)"[2]

After careful consideration of the parties' supplemental, as well as their principal, briefs, we conclude that the trial court lacked jurisdiction to vacate its prior order

---

[2]     Neither party cited *Griset II* in the trial court or in this court.  In their supplemental brief, the People observed that both parties cited *In re Rosenkrantz* (2002) 29 Cal.4th 616, 668 (*Rosenkrantz*) in their principal briefs in this court, and that *Rosencrantz* cited *Griset II*.  *Rosenkrantz* cited *Griset II* for the propositions that "[t]he doctrine of law of the case . . . governs later proceedings in the same case," (*id.* at p. 668, italics omitted) and that "[t]he doctrines of res judicata and collateral estoppel can give conclusive effect to a former judgment or to the determination of an issue in a different proceeding."  (*Ibid.* at fn. 15.)

As indicated by our supplemental briefing request, in *Griset II*, the Supreme Court also ruled that a trial court does "not have jurisdiction to reopen or retry the case" after an "unqualified affirmance" of a prior judgment (*Griset II*, *supra*, 25 Cal.4th at p. 701).  The *Griset II* court expressly distinguished this jurisdictional limitation from the doctrines of law of the case, res judicata, and collateral estoppel, mentioned above.  (*Id.* at pp. 701–702.)  We afforded the parties the opportunity to discuss *Griset II* by way of supplemental briefing since *Rosenkrantz* did not discuss the jurisdictional limitation aspect of the case and the parties did not address it in either the trial court or their principal briefs in this court.

granting the petition for writ of habeas corpus based on a change in the law. The People advance no authority or compelling argument for why the controlling principles decided in *Griset II* do not apply here. *Griset II* makes clear that a trial court lacks jurisdiction, after an unqualified affirmance, to reconsider the merits of an action, even in the face of a change in the law.

Further, applying this aspect of *Griset II* to habeas corpus proceedings is entirely consistent with case law providing that "[a] final order or judgment granting relief to a petitioner on habeas corpus is a conclusive determination . . . ." (*In re Crow* (1971) 4 Cal.3d 613, 623 (*Crow*); see *Jackson v. Superior Court* (2010) (*Jackson*) 189 Cal.App.4th 1051, 1067 [trial court loses jurisdiction to reconsider habeas ruling where ruling becomes "final and binding, or when the People filed a notice of appeal from the order"].) In short, we are aware of no principle of law that would permit the People, within this same habeas proceeding, "to revive this litigation after its final conclusion." (*Griset II*, *supra*, 25 Cal.4th at p. 702; see *People v. Superior Court (Gregory)* (2005) 129 Cal.App.4th 324, 331 (*Gregory*) [stating that, in habeas proceeding, " '[r]emittitur transfers jurisdiction back to the inferior court so that it may act upon the case again, *consistent with the judgment of the reviewing court*' " (italics added)].)

Accordingly, we conclude that the trial court's January 2018 order is void for lack of jurisdiction (see *Griset II*, *supra*, 25 Cal.4th at p. 701), and that we must therefore reverse that order. (*Ibid.* [stating that on an appeal from a void ruling taken by the trial court, "the reviewing court's jurisdiction is limited to reversing the trial court's void

4

acts"].)[3]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

A. *The commitment offenses*

At the age of 17, Berg murdered victim Kettie Hancock during a burglary/robbery of a store at which Hancock was the manager. Berg's girlfriend, who worked at the store, let Berg and an accomplice into the store. Berg stabbed Hancock more than 21 times.

Approximately two weeks prior to the Hancock murder, Berg committed a robbery of a gas station. During that robbery, Berg stabbed the victim, Richard Couch, at least twice, causing Couch to suffer a deep puncture wound to his left arm.

B. *The underlying criminal case*

In October 1996, the People charged Berg with murder (§ 187) (count 1), and alleged the special circumstance that Berg committed the murder in the course of a robbery (§ 190.2, subd. (a)(17)), and during the commission of a burglary (§ 190.2, subd. (a)(17)). The People also alleged that Berg personally used a knife during the murder (§ 12022, subd. (b)(1)). In addition, the People charged Berg with conspiracy to commit robbery and burglary (§ 182, subd. (a)(1)) (count 2), robbery (§ 211) (count 3), and burglary (§ 459) (count 4) and alleged a knife use allegation with respect to each count (§ 12022, subd. (b)(1)). Counts 1 through 4 were all related to the Hancock murder.

---

[3] In light of our conclusion, we need not consider the other contentions that Berg raises on appeal.

[4] Parts II.A–C, *post*, are drawn from our opinion in *Berg I*.

5

With respect to the incident involving Couch, the People charged Berg with attempted murder (§§ 664, 187, subd. (a)) (count 5), assault with a deadly weapon and by means of force likely to produce great bodily injury (§ 245, subd. (a)) (count 6), and robbery (§ 211) (count 7). The People also alleged numerous weapon and injury enhancements with respect to these counts.

Berg pled guilty to all charges and allegations in May 1997.

The trial court sentenced Berg to life without the possibility of parole (LWOP) on the murder conviction. Pursuant to section 654, the court stayed execution of the sentence on the knife enhancement (§ 12022, subd. (b)(1)) on count 1. The court also stayed execution of the sentences on both the substantive offenses and the enhancements on counts 2 through 4, pursuant to section 654. With respect to the attempted murder charged in count 5 and related enhancements, the court imposed an aggregate term of 11 years to be served concurrently with the LWOP sentence. The court stayed execution of the sentence on count 6 pursuant to section 654 and imposed a seven-year sentence on count 7, to be served concurrently with the LWOP sentence.

C. *Berg's petition for writ of habeas corpus*

In December 2014, Berg filed a petition for writ of habeas corpus and a supporting brief in which he contended that the sentencing court's imposition of an LWOP sentence for a crime that he committed as a juvenile violated the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution under *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) and *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*). Berg supported his petition with relevant

6

portions of the record in the underlying criminal case.

After the People filed an informal response and Berg filed a reply, the trial court issued an order to show cause as to why Berg's sentence should not be vacated and a resentencing hearing held.

The People filed a return and a supporting brief in which they argued that the sentencing court had given "full consideration to the relevant youth-related factors applicable to [Berg]," and contended that "further guidance by [the] *Miller* and *Gutierrez* decisions would not have altered the court's sentencing choice." (Boldface & capitalization omitted.) In the alternative, the People argued that *Miller* should not be applied retroactively to Berg's case, which was final at the time *Miller* was decided.

After Berg filed a denial and the habeas court held a hearing on the petition, the court issued an order granting the petition. In its July 2015 order granting the petition, the habeas court concluded that "current Eighth Amendment jurisprudence regarding the imposition of life sentences on juvenile offenders must be applied retroactively to persons serving actual or functional LWOP sentences." The habeas court further concluded that the sentencing court's statement of reasons for imposing an LWOP sentence on Berg did not comport with the requirements of *Miller*. The court ordered "that a writ of habeas corpus be issued; that [Berg's] sentence of LWOP be vacated; and that the matter be set for re-sentencing in the Superior Court."

D.  *Berg I*

The People appealed the trial court's order granting the petition for writ of habeas corpus.  (See Pen. Code, § 1506[5] [authorizing the People to take an appeal from "a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought"].)[6]  We affirmed the trial court's order granting Berg's petition for writ of habeas corpus.  (*Berg I*, *supra*, 247 Cal.App.4th 418.)  The Supreme Court granted the People's petition for review and deferred action in the matter pending consideration of a related issue in *In re Kirchner* (2016) 244 Cal.App.4th 1398, review granted May 18, 2016, S233508.  (*Berg I*, *supra*, review granted July 27, 2016, S235277, briefing deferred pursuant to Cal. Rules of Court, rule 8.512(d)(2).)  After issuing its opinion *In re Kirchner* (2017) 2 Cal.5th 1040, the Supreme Court dismissed review in this case and remanded the matter to this court.  (*Berg I*, *supra*, S235277, review dismissed July 26, 2017.)

---

5       Unless otherwise specified, all subsequent statutory references are to the Penal Code.

6       While the appeal was pending, the People filed an application in the trial court for a stay of the execution of the order granting Berg's petition for relief pursuant to section 1506.  Section 1506 provides in relevant part:

> "If the order [on the return of a writ of habeas corpus] grants relief other than a discharge or release from custody, the trial court or the court in which the appeal or petition for hearing is pending may, upon application by the people, in its discretion, and upon such conditions as it deems just stay the execution of the order pending final determination of the matter."

Berg filed an opposition to the application for a stay.  In August 2015, the trial court granted the People's application and stayed the execution of its order granting Berg's habeas petition.

8

We issued our remittitur to the trial court on August 2, 2017.

E. *Proceedings after the issuance of the remittitur in* Berg I

The People filed a document in the trial court on August 29, 2017 entitled, "Request to Set Status Conference Week of October 16, 2017, Based on Anticipated Mootness of Resentencing Hearing."[7]  (Some capitalization omitted.)  The People requested that a status conference be set in the case because a pending legislative change might moot the need for a resentencing hearing.

The People explained that the Legislature was in the "final stages" of passing a bill, Senate Bill No. 394 (2017–2018 Reg. Sess.) (Senate Bill No. 394), that " 'would make a person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which a life sentence without the possibility of parole has been imposed eligible for release on parole . . . during his or her 25th year of incarceration at a youth offender parole hearing.' "  (Quoting Legis. Counsel's Dig., Sen. Bill No. 394 (2017–2018 Reg. Sess.).)  The People stated that Senate Bill No. 394 would accomplish this result by making such persons eligible for a Youth Offender Parole Hearing pursuant to section 3051.

Citing *People v. Franklin* (2016) 63 Cal.4th 261, 279–280 (*Franklin*), the People maintained that Senate Bill No. 394 mooted Berg's claim that his sentence was unconstitutional under the Eighth Amendment.  In *Franklin*, the California Supreme Court held that the enactment of Penal Code section 3051, together with two related

---

7     The People indicated that they filed this document in "anticipation of [an] informal status conference" in the case.

9

statutes in Senate Bill No. 260 (2013–2014 Reg. Sess.) (Senate Bill No. 260), mooted a defendant's claim that his sentence of 50 years to life for a crime that he committed as a juvenile was unconstitutional under *Miller* because it was the functional equivalent of an LWOP sentence. (*Franklin*, *supra*, at pp. 279–280). The *Franklin* court reasoned:

> "In sum, the combined operation of section 3051 [and the related statutes] means that Franklin is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent. Because Franklin is not serving an LWOP sentence or its functional equivalent, no *Miller* claim arises here. The Legislature's enactment of Senate Bill No. 260 has rendered moot Franklin's challenge to his original sentence under *Miller*." (*Ibid.*)

The People explained that while former section 3051, as originally enacted, *excluded* juvenile LWOP offenders, Senate Bill No. 394 would extend the benefits of section 3051 to such persons. The People argued that Berg's sentence would be lawful under *Miller* under the amended version of section 3051 because he would have a " 'meaningful opportunity for release no more than 25 years into [his] incarceration.' " (Quoting *Franklin*, *supra*, 63 Cal.4th at p. 277.)

The trial court issued an ex part minute order on August 31 that stated in relevant part:

> "Counsel and the court meet in an unreported chambers conference to address, among other things, the possible impact on this case of pending legislation that would make juvenile offenders sentenced to LWOP subject to the provisions of Penal Code section 3051 (SB 394.) The parties agree to a further status conference to be conducted before this court on October 27, 2017, at 10:00 a.m., by which time it should be known if the legislation passes. At that hearing, the parties may further address the effects of that legislation on Mr. Berg's case. It is the intention of the court that, pending that hearing, the case will be maintained . . . status quo, and all issues and

10

claims that each party may have are preserved."  (Boldface omitted.)

The People filed a supplemental letter brief on October 25, 2017 informing the court that Senate Bill No. 394 had been enacted into law and would become effective on January 1, 2018.  The People restated their argument that the change in the law mooted Berg's *Miller* claim and requested that the court deny his habeas petition.

The court held an unreported chambers conference with counsel on November 9 and set the matter for a further hearing on December 15.[8]

The People filed a "Request to Reconsider and Vacate Previous Order," (some capitalization omitted) on December 13 asking that the court vacate its prior order granting the petition for writ of habeas corpus in light of the adoption of Senate Bill No. 394.  In their brief, the People noted that in *People v. Lozano* (2017) 16 Cal.App.5th 1286, 1292 (*Lozano*), review granted February 21, 2018, S246013, review dismissed as moot August 29, 2018,[9] the Court of Appeal had concluded that the adoption of Senate Bill No. 394 mooted a defendant's claim that her LWOP sentence violated *Miller*.  With respect to Berg's case, the People argued that "because the appeal is now complete, jurisdiction has reverted back to [the trial] court."  The People further contended that the trial court "must use its inherent power to modify its own order."  (Capitalization &

---

[8]     The court ordered its November 9 minute order to be issued nunc pro tunc as to October 27.

[9]     In its order dismissing review in *Lozano*, the Supreme Court stated, "The above-captioned matter is dismissed as moot in light of Senate Bill No. 394, signed into law on October 11, 2017."  (*Lozano*, *supra*, S246013, review dismissed as moot August 29, 2018.)

11

boldface omitted.)

Berg filed an opposition to the People's request, in which he argued that the trial court "lack[ed] jurisdiction" to refuse to provide him with a "constitutionally sufficient resentencing hearing," as required by this court's decision in *Berg I,* among other arguments. Berg maintained in relevant part, "A trial court has no jurisdiction after remand from the Court of Appeal to do anything other than follow the directions of the remand order . . . ." (Citing *People v. Dutra* (2006) 145 Cal.App.4th 1359 (*Dutra*).)[10]

## F. *The trial court's January 2018 order*

The trial court held a hearing on January 12, 2018 at which the parties presented oral argument.[11] The court issued a final order granting the People's request on January 23. The trial court explained that it understood that Berg had argued that the trial court "is constrained to follow the Court of Appeal opinion and remittitur," and stated that the resolution of Berg's contention "necessarily turns on the effect of the decision by the Court of Appeal affirming the grant of the petition."

The trial court noted that in *Dutra*, the Court of Appeal stated, " 'Where a reviewing court reverses a judgment with directions . . . the trial court is bound by the directions given and has no authority to retry any other issue or to make any other findings. Its authority is limited wholly and solely to following the directions of the

---

[10] Berg also maintained that Senate Bill No. 394 did not moot his claim. In addition, Berg argued that *Lozano* was distinguishable because, unlike in this case, the defendant in that case had not had her sentence vacated by an order granting a petition of habeas corpus.

[11] On December 15, 2017, the court continued the hearing until January 12, 2018.

12

reviewing court.' " (Quoting *Dutra*, *supra*, 145 Cal.App.4th at p. 1367.) However, the trial court distinguished *Dutra* on the ground that in *Berg I*, this court did not issue any specific directions, but rather, as the trial court stated, "simply affirmed the granting of the petition."

The trial court further concluded that it possessed inherent power to reconsider its prior ruling granting Berg's habeas petition. In addition, on the merits of the People's request, the court ruled that the adoption of Senate Bill No. 394 rendered Berg's claim moot. (Citing *Lozano*, *supra*, 16 Cal.App.5th at p. 1289.) The court summarized its ruling by stating:

> "The court's order of July 16, 2015, granting the writ of habeas corpus, is hereby vacated. A new order is entered denying the petition, and the parties are restored to the *status quo ante*.
>
> "The sentence and judgment as originally pronounced are reinstated, subject, however, to the modification specified by SB 394 that the sentence of LWOP is no longer in fact 'without the possibility of parole,' because he may seek parole after 25 years."

G. *The current appeal*

Berg appeals from the trial court's January 23, 2018 order.[12]

_____

12    In their respondent's brief, the People state, "Berg filed a timely notice of appeal from the post-judgment order that vacated the grant of a new sentencing hearing." (See § 1237, subd. (b) [stating that an appeal may be taken "[f]rom any order made after judgment, affecting the substantial rights of the party"].) We agree.

"[A]n order granting a petition for writ of habeas corpus is an appealable order analogous to a final judgment." (*Jackson*, *supra*, 189 Cal.App.4th at p. 1064.) Therefore, the trial court's January 23, 2018 order vacated a prior order that was "analogous to a final judgment." (*Ibid.*) Further, the trial court's January 23, 2018 order stated that Berg's original sentence remained in effect, as modified by the change in the law effectuated by Senate Bill No. 394. Thus, the trial court's January 23, 2018 order

13

DISCUSSION

*The trial court lacked jurisdiction to reconsider its prior order granting Berg's petition for writ of habeas corpus after our unqualified affirmance of the court's prior order*

Berg claims that the trial court "lacked jurisdiction on remand to vacate the previous order granting the writ of habeas corpus." (Capitalization & boldface omitted.)

A. *Governing law*

1. *Griset II*

In *Griset II*, *supra*, 25 Cal.4th 688, the Fair Political Practices Commission (FPPC) instituted administrative enforcement action proceedings against a political candidate (Griset) and two entities that Griset controlled (collectively "plaintiffs") based on allegations that plaintiffs had violated Government Code section 84305. That statute requires "candidates for public office, and individuals or groups supporting or opposing a candidate or ballot measure, to identify themselves on any mass mailings they send to prospective voters." (*Griset II*, *supra*, at p. 692.) Plaintiffs filed an action against the FPPC in which they challenged the constitutionality of Government Code section 84305 and sought to enjoin the administrative proceedings. (*Griset II*, at p. 692.) After the trial court denied plaintiffs' motion for a preliminary injunction, the FPPC fined plaintiffs in the administrative proceedings. (*Id.* at p. 693.)

Plaintiffs subsequently filed an amended and supplemental complaint that

---

modified the original judgment sentencing Berg to LWOP. Accordingly, we conclude that the January 23, 2018 order constitutes a postjudgment order substantially affecting Berg's rights, and therefore is appealable. (See § 1237, subd. (b).)

14

included a cause of action seeking a writ of administrative mandate against the FPPC. (*Griset II*, *supra*, 25 Cal.4th at p. 693.) In addition, plaintiffs brought three other related causes of action for declaratory and injunctive relief. (*Ibid.*) All of plaintiffs' causes of action were based on the premise that Government Code section 84305 was unconstitutional. (*Griset II*, *supra*, at p. 693.) Plaintiffs filed motions seeking a peremptory writ of mandate with respect to their first cause of action, for summary adjudication as to the other causes of action, and for summary judgment. (*Ibid.*)

The trial court issued an order denying the petition for writ of mandate and denying plaintiffs' motions for summary adjudication and summary judgment. (*Griset II*, *supra*, 25 Cal.4th at pp. 693–694.) The Court of Appeal affirmed the trial court's ruling denying the petition for writ of mandate. (*Id.* at p. 694.) The California Supreme Court granted plaintiffs' petition for review and affirmed the judgment of the Court of Appeal in *Griset v. Fair Political Practices Com.* (1994) 8 Cal.4th 851, 855 (*Griset I*). (*Griset II*, *supra*, at p. 694.) On December 29, 1994, the California Supreme Court issued its remittitur in *Griset I*. The United States Supreme Court denied plaintiffs' certiorari petition on April 24, 1995. (*Griset II*, at p. 694.)

In August 1995, plaintiffs " 'renewed' " (*Griset II*, *supra*, 25 Cal.4th at p. 694) their motions for summary adjudication and summary judgment with respect to the causes of action for declaratory and injunctive relief on the ground that an intervening change in the law rendered Government Code section 84305 unconstitutional. (*Griset II*, *supra*, at

15

p. 694.)  The trial court granted summary judgment in favor of the FPPC.[13]  (*Id.* at p.

694.)  Plaintiffs appealed from the ensuing judgment, and the Court of Appeal reversed

the judgment for the FPPC based on the intervening change in the law.  (*Id.* at p. 695.)

The California Supreme Court granted the FPPC's petition for review.  (*Ibid.*)

The *Griset II* court first concluded that the trial court's decision in *Griset I* had

been an appealable judgment because it "disposed of all causes of action framed by the

pleadings, leaving no substantive issue for future determination."  (*Griset II*, *supra*, 25

Cal.4th at p. 700.)  The *Griset II* court then considered whether, after its prior decision

became final in *Griset I*, the trial court and the Court of Appeal had jurisdiction to

reconsider the merits of the case, including the constitutionality of Government Code

section 84305.

As to this issue, the *Griset II* court explained that the scope of a trial court's

jurisdiction after a decision from a reviewing court is contained in the remittitur:

> "The order of the reviewing court is contained in its remittitur, which
> defines the scope of the jurisdiction of the court to which the matter
> is returned.  'The order of the appellate court as stated in the
> remittitur, "is decisive of the character of the judgment to which the
> appellant is entitled.  The lower court cannot reopen the case on the
> facts, allow the filing of amended or supplemental pleadings, nor
> retry the case, and if it should do so, the judgment rendered thereon
> would be void." ' [Citations.]"  (*Griset II*, *supra*, 25 Cal.4th at p.
> 701; accord *Snukal v. Flightways Manufacturing, Inc.* (2000) 23
> Cal.4th 754, 774 ["the terms of the remittitur define the trial court's

---

[13]    The *Griset II* court explained that the trial court granted summary judgment in
favor of the FPPC on the basis of a former local rule of court that "allowed a trial court to
grant summary judgment in favor of a party opposing a motion for summary judgment
even though that party had not itself moved for summary judgment."  (*Griset II*, *supra*,
25 Cal.4th at p. 695, fn. 2.)

jurisdiction to act"].)

The *Griset II* court then examined the scope of the trial court's jurisdiction upon the issuance of the remittitur from *Griset I* as follows:

> "In *Griset I*, *supra*, 8 Cal.4th at page 867, we affirmed without directions the judgment of the Court of Appeal, which in turn had rendered an unqualified affirmance of the superior court's judgment. An unqualified affirmance 'ordinarily sustains the judgment and ends the litigation.' [Citation.] Once our decision in *Griset I* became final, the superior court did not have jurisdiction to reopen or retry the case, which the court purported to do when it allowed plaintiffs in 1995 to 'renew[ ]' their 1991 motions for summary adjudication and summary judgment. Therefore, the superior court's later judgment was void insofar as it encompassed or rested upon a redetermination of the merits of the litigation." (*Griset II*, *supra*, 25 Cal.4th at p. 701.)

The *Griset II* court also explained that the Court of Appeal had erred in relying on the " 'intervening change in controlling law' " (*Griset II*, *supra*, 25 Cal.4th at p. 701) exception in the law of the case doctrine and a similar exception to the doctrines of res judicata and collateral estoppel to reverse the judgment of the trial court, reasoning:

> "Our decision in *Griset I*, once it became final, terminated this litigation as to all causes of action in plaintiffs' complaint. Because plaintiffs thereafter did not commence a separate lawsuit, but instead improperly sought to revive this litigation after its final conclusion, there was no pending legal proceeding to which the above mentioned doctrines or their exceptions properly could be applied." (*Griset II*, *supra*, at p. 702.)

Finally, the *Griset II* court explained that when reviewing a trial court's void ruling, "the reviewing court's jurisdiction is limited to reversing the trial court's void acts." (*Griset II*, *supra*, 25 Cal.4th at p. 701.) Accordingly, the *Griset II* court directed the Court of Appeal to "reverse as void," the trial court's judgment issued after the

17

issuance of the remittitur in *Griset I*. (*Griset II*, *supra*, at p. 702.)

### 2. *The law governing petitions for habeas corpus*

#### a. *Relevant statutory provisions*

Statutory procedures governing habeas corpus proceedings are outlined in sections 1473 through 1509.1.[14] Section 1506 governs the appeal of a final order on a petition for writ of habeas corpus and provides in relevant part:

> "An appeal may be taken to the court of appeal by the people from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought, in all criminal cases. . . . If the people appeal from an order granting the discharge or release of the defendant, or petition for hearing in either the court of appeal or the Supreme Court, the defendant shall be admitted to bail or released on his own recognizance or any other conditions which the court deems just and reasonable, subject to the same limitations, terms, and conditions which are applicable to, or may be imposed upon, a defendant who is awaiting trial. If the order grants relief other than a discharge or release from custody, the trial court or the court in which the appeal or petition for hearing is pending may, upon application by the people, in its discretion, and upon such conditions as it deems just stay the execution of the order pending final determination of the matter."

Courts interpreting section 1506 have stated that a court's order staying execution of a final habeas order under this statute operates *during the pendency of the appeal*. For example, in *People v. Huff* (1975) 46 Cal.App.3d 361, 365 (*Huff*), the Court of Appeal interpreted the stay provision of section 1506 as providing that "if an appeal is taken, and

---

[14] California Rules of Court, rules 4.550–4.552 prescribe the procedures governing petitions for habeas corpus in the trial court. California Rules of Court, rule 8.388 governs appeals from an order granting a petition for writ of habeas corpus. Neither the parties nor our own research has uncovered any provisions within these rules that is relevant to the issues in this appeal.

a request for a stay of the order is made and granted, then the order is stayed *pending appeal . . . ."* (Italics added.)  Similarly, in *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 774 (*Bilbrey*), the Court of Appeal observed that a stay issued pursuant to section 1506 operates "during the *pendency of the appeal*," (italics added) and observed that "a defendant who is granted partial relief—something short of release or discharge—may benefit from execution of the favorable order pending the People's appeal unless the trial or appellate court exercises its discretion to grant a stay requested by the People," (italics omitted).)

    b. *Relevant case law*

  In *Jackson*, *supra*, 189 Cal.App.4th 1051, the Court of Appeal considered the scope of a trial court's authority and jurisdiction to reconsider and vacate an order granting a petition for writ of habeas corpus during the period within which the People could file an appeal from the order.  (*Jackson*, *supra*, at pp. 1056–1057.)  The *Jackson* court began its analysis by explaining the nature of a habeas corpus proceeding as follows:

> " 'The Legislature has labeled [a habeas corpus proceeding] a "Special Proceeding[ ] of a Criminal Nature" [citation], but the label is not dispositive.  [Citations.]  It is not itself a criminal case, and it cannot result in added punishment for the petitioner.  Rather, it is an independent action the defendant in the earlier criminal case institutes to challenge the results of that case.  [Citation.]' (*In re Scott* (2003) 29 Cal.4th 783, 815.)  In *Scott*, our Supreme Court held that a habeas corpus proceeding is civil in nature for purposes of deciding how the petitioner may assert the privilege against self-incrimination.  (*Ibid.*)  However, the court stated that it 'need not, and [did] not, decide whether a habeas corpus proceeding is civil or criminal for other purposes.  [Citation.]  It is a special proceeding and not entirely analogous to either category.  [Citation.]' (*Id.* at p.

816, fn. 6; but see *In re Barnett* (2003) 31 Cal.4th 466, 478, fn. 10 ['habeas corpus proceedings like the one before us are properly viewed as civil actions designed to overturn presumptively valid criminal judgments and not as part of the criminal process itself'].)" (*Id.* at p. 1063.)

The *Jackson* court stated that an order granting a habeas petition is "analogous to a final judgment" (*Jackson*, *supra*, 189 Cal.App.4th at p. 1064), explaining:

" 'An "order on writ of habeas corpus" is the court's order granting or denying the relief sought by the petitioner.' [Citation.] No appeal lies from an order denying a petition for writ of habeas corpus. [Citations.] However, the People may file an appeal from an order granting a petition for writ of habeas corpus even if the order does not discharge a prisoner from custody. [Citations.] Therefore, an order granting a petition for writ of habeas corpus is an appealable order analogous to a final judgment." (*Ibid.*)

Ultimately, the *Jackson* court concluded that, in light of the trial court's broad " 'inherent powers,' " (*Jackson*, *supra*, 189 Cal.App.4th at p. 1065) to reconsider " 'interim rulings' " (*ibid.*, quoting *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246 (*Castello*)), a trial court may "reconsider and vacate an order granting a petition for writ of habeas corpus within the 60–day time period for the People to file an appeal from the order, as long as no appeal has yet been filed." (*Jackson*, *supra*, at pp. 1056–1057.)

However, the *Jackson* court was careful to explain that the trial court's authority to reconsider its rulings *ended* when the trial court lost jurisdiction of the matter due to finality or the filing of an appeal. In this regard, the *Jackson* court stated:

"[T]he court had the inherent power to reconsider its order granting the petition for writ of habeas corpus, and that power would only end with its loss of jurisdiction. [Citation.] *The loss of jurisdiction for purposes of reconsideration of the ruling would occur when the order became final and binding, or when the People filed a notice of appeal from the order.*" (*Jackson*, *supra*, 189 Cal.App.4th at p.

20

1067, italics added.)

The *Jackson* court's conclusion that an order granting a petition for writ of habeas corpus is "analogous to a final judgment" (*Jackson*, *supra*, 189 Cal.App.4th at p. 1064) is in accord with case law. For example, an order granting habeas relief constitutes a "final judgment" (*Crow*, *supra*, 4 Cal.3d at p. 616), for purposes of the doctrine of res judicata. (*Id.* at p. 623.) The *Crow* court explained:

> "The social policies which underlie the doctrine of res judicata and the high purpose of the writ of habeas corpus also conjoin in barring a governmental attempt to relitigate the grant of relief in habeas corpus. The writ of habeas corpus affords an efficacious means of vindicating an individual's fundamental rights. [Citation.] The doctrine of res judicata prevents the relitigation of issues determined by a final judgment in a prior action between the same parties or those in privity with the original parties. [fn. omitted.] [Citation.] A final order or judgment granting relief to a petitioner on habeas corpus is a conclusive determination that he is illegally held in custody; it is res judicata of all issues of law and fact necessarily involved in that result." (*Crow*, *supra*, at p. 623; see *In re Ditsch* (1984) 162 Cal.App.3d 578 [applying law of the case doctrine in habeas proceeding].)

21

Similarly, in *Gregory*, *supra*, 129 Cal.App.4th 324, the Court of Appeal explained that a final order granting a habeas petition is *not* interlocutory or interim in nature and that the " ' "one final judgment" ' rule" (*Gregory*, *supra*, at p. 330) applies to such orders.[15]  (See *id.* at pp. 330–331 ["This rule [(i.e., the one final judgment rule)] does not change simply because habeas corpus proceedings are involved, and because the statute authorizing an appeal therein refers to a 'final order' instead of a 'final judgment.' (§ 1506.)"].)  Further, the *Gregory* court explained that after a decision of a reviewing court in a habeas proceeding, " '[r]emittitur transfers jurisdiction back to the inferior court so that it may act upon the case again, *consistent with the judgment of the reviewing court*.' "  (*Id.* at p. 331.)

B.  *Application*

*Griset II* makes clear that a trial court does "not have jurisdiction to reopen or retry [a] case" after "unqualified affirmance" of a prior final judgment.  (*Griset II*, *supra*, 25 Cal.4th at p. 701.)  *Griset II* is consistent with well-established principles of finality (*People v. DeLouize* (2004) 32 Cal.4th 1223, 1231 ["judicial error in the making of a

---

15    "The ' "one final judgment" ' rule is 'a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. [Citation.]  The theory underlying the rule " 'is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' "  [Citation.]' " (*Gregory*, *supra*, 129 Cal.App.4th at p. 330.)

22

final order or judgment 'may not be corrected except pursuant to statutory procedures'[16] or on the limited grounds available for a collateral attack"]) and remains good law. (See *People v. Picklesimer* (2010) 48 Cal.4th 330, 337 (*Picklesimer*) ["Following appellate affirmance of a trial court judgment and issuance of a remittitur, 'the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*' "]; *Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313 [citing *Griset II* for proposition that "trial court may not reopen case after appellate court's unqualified affirmance"]; *Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160, 1173 [citing *Griset II* for proposition that "trial court had no jurisdiction to rule on a renewed motion after an appeal because the entire case had been effectively disposed of by a final judgment"].)

Further, courts have concluded that an order granting a petition for writ of habeas corpus is "analogous to a final judgment" (*Jackson*, *supra*, 189 Cal.App.4th at p. 1064; *Crow*, *supra*, 4 Cal.3d at p. 616 [describing an order granting a petition for writ of habeas corpus as a "final judgment"].) In addition, the *Jackson* court's description of a trial court's jurisdiction to reconsider habeas rulings is fully consistent with an application of *Griset II* in this context. (See *Jackson*, *supra*, at p. 1067 ["The loss of jurisdiction for purposes of reconsideration of the ruling would occur when the order became final and

---

16     We are unaware of any statutory authority authorizing a trial court to reconsider a final order granting a petition for writ of habeas corpus on remand after the unqualified affirmance of the order.

23

binding, or when the People filed a notice of appeal from the order."])[17] Further, courts in the habeas context have applied generally applicable doctrines of finality (see e.g., *Crow*, *supra*, at p. 623; *Gregory*, *supra*, 129 Cal.App.4th at p. 331), and have stated that such proceedings are designed to provide an "efficacious means of vindicating an individual's fundamental rights." (*Crow*, at p. 623.) Indeed, if anything, section 1506 evinces a Legislative intent for the timely execution of orders granting petitions for habeas corpus since, unlike "the general jurisdiction rule,"[18] absent a stay, the trial court has jurisdiction to execute a habeas order *during* the pendency of the People's appeal from that order. (*Bilbrey*, *supra*, 25 Cal.App.5th at p. 776.)[19] In addition, the People have not cited any authority, *in any context*, in which a trial court may reexamine a final ruling akin to a final judgment after that ruling has been affirmed by a reviewing court.[20]

[17]     In this case, the People did file a notice of appeal from the trial court's 2015 order granting Berg's petition.

[18]     " 'The general rule is that " ' "[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur" [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]' " ' [Citations.]" (*Bilbrey*, 25 Cal.App.5th at p. 771, italics omitted.) In the habeas context, however, this rule does not apply and a trial court has jurisdiction to execute its order despite a pending appeal, absent the issuance of a stay by the issuing or reviewing court under section 1506. (*Bilbrey*, *supra*, at p. 776.)

[19]     Historically, orders granting petitions for writ of habeas corpus were imbued with an even greater attribute of finality in that the People had no right of appeal from such orders. (See *Bilbrey*, *supra*, 25 Cal.App.5th at p. 772.)

[20]     As noted in part I, *ante*, the *Griset II* court expressly distinguished the doctrines of law of the case, res judicata, and collateral estoppel, each of which has exceptions for

24

The People's attempts to carve out a special exception to the *Griset II* rule of finality for habeas corpus proceedings are not persuasive.[21]  The People's primary argument appears to be that the trial court should be able to exercise jurisdiction after the remittitur in *Berg I* to rule on their request to reconsider the merits of Berg's petition due to the change in the law, because a habeas petitioner may raise anew a claim rejected on direct appeal in a habeas petition " 'when there has been a change in the law affecting the petitioner.' "  (Citing *In re Reno* (2012) 55 Cal.4th 428, 478 (*Reno*).)  This exception to the ordinary bar against such relitigation,[22] permits a habeas petitioner to file a *new* proceeding; it does not *extend* jurisdiction in a *concluded* proceeding. This distinction is

intervening changes in the law, from the limitations on a trial court's jurisdiction on remand from an unqualified affirmance.  (See *Griset II*, *supra*, 25 Cal.4th at p. 702 ["Because plaintiffs thereafter did not commence a separate lawsuit, but instead improperly sought to revive this litigation after its final conclusion, there was no pending legal proceeding to which the above mentioned doctrines [(i.e., law of the case, res judicata, and collateral estoppel)] or their exceptions [(i.e., intervening change in controlling law] properly could be applied"].)

21     We also are not persuaded by the People's contention that *Griset II* bears only a "fleeting resemblance" to this case and that *Griset II* is not "on point" because *Griset II* involved an appeal after a final judgment, and Berg's "judgment stood intact and unchallenged for more than a decade."  As discussed in the text, we find *Griset II* applicable in considering the scope of the trial court's jurisdiction after the unqualified affirmance of its prior final order granting Berg's habeas petition, which is "analogous to a final judgment."  (*Jackson*, *supra*, 189 Cal.App.4th at p. 1064.)  We are not applying *Griset II* to the judgment in the underlying criminal case.

22     The *Reno* court described this bar as follows, "There may be no more venerable a procedural rule with respect to habeas corpus than what has come to be known as the *Waltreus* [(*In re Waltreus* (1965) 62 Cal.2d 218, 225)] rule; that is, legal claims that have previously been raised and rejected on direct appeal ordinarily cannot be reraised in a collateral attack by filing a petition for a writ of habeas corpus."  (*Reno*, *supra*, 55 Cal.4th at p. 476.)

25

significant, for under the People's reasoning, the trial court could exercise its jurisdiction indefinitely to reconsider previously final rulings upon a change in the law. A legal action must come to an end at some clear point, and *Griset II* defines that end point.

For example, in this case, the remittitur in *Berg I* issued on August 2, 2017 and the law at issue did not change until January 1, 2018. While the People suggested in their brief in the trial court that the trial court could reconsider its ruling because the "court has not executed its order," we are aware of no authority that would support the proposition that a final ruling becomes subject to reconsideration merely because it has not been executed by the trial court.[23] To adopt such a rule would leave the finality of the trial court's ruling dependent upon the whims of the trial court's discretion to execute the ruling. Such a result would also be in contravention of the well-established law that, upon the issuance of the remittitur of an unqualified affirmance, the trial court's jurisdiction is limited to that necessary to " '*carry out the judgment as ordered by the appellate court*.' " (*Picklesimer*, *supra*, 48 Cal.4th at p. 337; see also *ibid.* [observing that " '[i]n most cases, after the judgment has become final, there is nothing pending to which a [postjudgment] motion may attach' "].)

---

[23] The People do not contend on appeal that the trial court's July 2015 order granting Berg's petition for writ of habeas corpus remained stayed pursuant to section 1506 *after* the issuance of our remittitur in *Berg I,* or that section 1506 permits a trial court to continue to stay the execution of an order granting habeas relief after the unqualified affirmance of that order. (See *Bilbrey*, *supra*, 25 Cal.App.5th at p. 775 [" 'if an appeal is taken, and a request for a stay of the order is made and granted, then the order is stayed *pending appeal*' " (italics added), quoting *Huff*, *supra*, 46 Cal.App.3d at p. 365].)

26

We are not persuaded by the People's contention, raised in the trial court, that the trial court had "inherent power[s]" to reconsider a final ruling.  The law is clear that a trial court's inherent power[s] " 'end[ ] . . . with the loss of jurisdiction.' "  (*Castello*, *supra*, 65 Cal.App.4th at p. 1248; *Jackson*, *supra*, 189 Cal.App.4th at pp. 1067–1068.)  A court's inherent powers do "not create jurisdiction; rather, the existence of jurisdiction is the premise for [their] application."  (*Picklesimer*, *supra*, 48 Cal.4th at p. 338 [rejecting argument that statute broadly authorizing court to use " 'all the means necessary' " to effectuate jurisdiction provided jurisdiction for trial court to consider postjudgment motion filed after finality of judgment].)

In their principal brief, the People echo the trial court's reasoning that the trial court had jurisdiction to reconsider the merits of the case because our remittitur in *Berg I* did not contain " 'specific directions,' " within the meaning of *Dutra*.  (See *Dutra*, *supra*, 145 Cal.App.4th at p. 1366 ["Where a reviewing court reverses a judgment with directions to enter judgment for the plaintiff, the trial court is bound by the directions given.  Its authority is limited wholly and solely to following the directions of the reviewing court.  [Citation.]  Any judgment rendered contrary to such specific directions would be void"].)  The People contend that the trial court properly determined that since our decision in *Berg I* " 'simply affirmed the granting of the petition,' " the trial court was free to reconsider the merits of that petition upon the resumption of its jurisdiction over the case after the issuance of the remittitur in *Berg I*.  *Griset II* makes clear that this is not

27

correct.  (*Griset II*, *supra*, 25 Cal.4th at p. 701 [trial court did "not have jurisdiction to reopen or retry the case" after "unqualified affirmance" of prior judgment]; see *Picklesimer*, *supra*, 48 Cal.4th at p. 337 ["Following *appellate affirmance of a trial court judgment* and issuance of a remittitur, 'the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*,' " quoting *Dutra*, *supra*, at p. 1366 (first italics added, second italics in original)].)

Finally, the People raise what might be thought of as a "fairness" argument, arguing that "there is no reason to bind [the People] . . . to a habeas ruling that has been undermined by a later change in the law . . . simply because this change occurred after an appeal."  To this we can say only that timing often matters in the law.  The fact that the Legislature did not provide a remedy for the unconstitutionality of Berg's sentence until 2018, *after* our unqualified affirmance of the trial court's order granting his petition for writ of habeas corpus, is not a basis for contorting well-established law to vest the trial court with jurisdiction where none exists.  In any event, while we are aware that our decision might provide Berg with a result different from those who are subject to the changed law, we cannot expand the trial court's jurisdiction beyond legal limits.  (See *Dutra*, *supra*, 145 Cal.App.4th at p. 1362 [stating that trial court was required to follow remittitur even though "the result gives Dutra more protections than other defendants . . . that does not equate to a miscarriage of justice for her or the People"].)

28

IV.

DISPOSITION

The trial court's January 23, 2018 order is reversed as void.


                                                        AARON, J.

WE CONCUR:

NARES, Acting P. J.

GUERRERO, J.