Filed 3/7/22  P. v. Cummings CA2/5
Opinion following transfer from Supreme Court
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>MILTON CUMMINGS III,<br><br>　　Defendant and Appellant. | B299490<br><br>(Los Angeles County Super. Ct. No. KA038352-02) |

　　APPEAL from an order of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Reversed and remanded.

　　Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Acting Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

Years ago, a trial jury found Milton Cummings III (defendant) guilty of murder and found true a special circumstance allegation, which triggered a life without parole sentence. More recently, defendant filed a petition to vacate his murder conviction in light of amendments Senate Bill No. 1437 (2017-2018 Reg. Sess.) made to the Penal Code's murder statutes. The trial court summarily denied the petition without first appointing counsel, relying on this court's prior holding that the jury was told it must find defendant intended to kill the murder victim in order to find the special circumstance true. We initially affirmed, but our Supreme Court granted review and transferred the matter back to us with instructions to vacate our opinion and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). Our prior opinion is hereby vacated, and the dispositive question that we now decide is whether the failure to appoint counsel for defendant was harmless.

## I. BACKGROUND

In 1998, the Los Angeles County District Attorney charged defendant with murder, attempted murder, shooting at an occupied motor vehicle (Pen. Code,[1] § 246), and permitting another to shoot from a vehicle (former § 12034, subd. (b)) in connection with a September 1997 gang-related drive-by shooting. A co-defendant, Samont Lamont Winn (Winn), was a member of the same criminal street gang as defendant and charged with murdering the same victim. The information alleged the victim's murder was perpetrated by means of discharging a firearm from a motor vehicle with intent to inflict

---

[1]    Undesignated statutory references are to the Penal Code.

2

death, a special circumstance that would call for at least a life without parole sentence if found true. (§ 190.2, subd. (a)(21).)

According to the evidence presented at trial, defendant was driving a vehicle when Winn, a passenger in the car, spotted the murder victim in another car and believed he was a member of a rival gang. Winn told defendant he was "gonna get him [i.e., the victim]" and "gonna do him," and as defendant later drove alongside the victim's car, Winn fired five to seven gunshots into the other car, killing the victim and wounding another passenger.[2]

Defendant's jury was instructed on principles of direct aiding and abetting with CALJIC No. 3.01. The jury was also instructed on the natural and probable consequences doctrine (CALJIC No. 3.02) and on second degree felony murder principles (CALJIC Nos. 8.32 and 8.34). As to the special circumstance allegation, defendant's jury received a written instruction that was an unmodified version of CALJIC No. 8.81.21,[3] but as we will

---

[2]     This court previously granted the Attorney General's motion to take judicial notice of our prior opinion and the record in defendant's direct appeal from his convictions at trial, Court of Appeal case number B125529, plus a subsequent habeas proceeding, case number B282768.

[3]     The written instruction read: "To find that the special circumstance, referred to in these instructions as murder by means of an intentional discharge of a firearm from a motor vehicle, is true, it must be proved: [¶] 1. The murder was perpetrated by means of discharging a firearm from a motor vehicle; [¶] 2. The perpetrator intentionally discharged the firearm at another person or persons outside the vehicle;

3

momentarily discuss in greater detail, the instructions as given orally by the court and the arguments as made by counsel informed the jury it must find defendant had the intent to kill in order to find the alleged special circumstance true. The jury found defendant guilty of murder (and all other counts on which it was asked to make a finding) and found the associated special circumstance true.

On direct appeal, defendant argued the jury's special circumstance true finding should be reversed because the written instruction the jury was given did not require the jury to find defendant, as an aider and abettor in the murder, had the intent to kill in order to find the special circumstance true as to him. This court held there was no error in instructing the jury because the record as a whole demonstrated the jury understood it must find defendant had the intent to kill to find the special circumstance true. We quote the pertinent excerpts from the prior opinion at length:

"The trial court orally instructed both juries [defendant and Winn were tried using two juries] simultaneously. It read to the juries a modified version of CALJIC No. 8.81.21 relating to the special circumstance of murder by means of discharging a firearm from a motor vehicle. As modified, the instruction stated that in order to find the special circumstance true, the jury had to find that '[t]he perpetrator or any aider and abettor intended to inflict death at the time the firearm was discharged.' It had previously discussed with all counsel the modification and all counsel had indicated they had no objection to the modified version of the

_____

and [¶] 3. The perpetrator, at the time he discharged the firearm, intended to inflict death."

4

instruction. The modification was designed to inform the jury that both the perpetrator (Winn) and the aider and abettor ([defendant]) had to have intended to inflict death at the time the firearm was discharged. After this modified instruction was read to the juries, the attorneys argued the case to each jury separately. The prosecutor and defense counsel for [defendant] both repeatedly, clearly and specifically argued to the jury that it was required to separately determine whether or not [defendant] had an intent to kill before it could find the special circumstance true. The trial court provided both juries with written jury instructions. Winn's jury received the modified written instruction but [defendant's] jury received an unmodified version of CALJIC No. 8.81.21.

"The modification of CALJIC No. 8.81.21 so it would apply to both Winn and [defendant] by using the word 'or' to refer separately to each defendant was not error. It was understood by the court and all counsel to apply to both defendants and to require the jury to find each defendant had an intent to kill before it could find the special circumstance true. No objection to the final wording was made and the argument of counsel reflects that counsel understood the meaning of the instruction as read to each jury. If trial counsel found the instruction objectionable, he was obligated to request further modification at trial. [Citation.]

"Defendant['s] . . . argument on appeal in this regard invokes hypertechnical rules of grammar relating to conjunctive versus disjunctive terms and ignores the context within which the instructions were read to the jury, which included detailed argument by trial counsel. No error occurred when the trial court read the instruction to the jury.

"Even if error occurred in the trial court's modification of CALJIC No. 8.81.21 that it read to the jury, or in the court's failure to include the modification in the package of written instructions provided to [defendant's] jury, it is clear that no prejudice occurred. The record shows the jury knew it had to specifically find that the aider and abettor ([defendant]) had the intent to kill before it could return a true finding on the special circumstance allegation. [¶] . . . [¶]

"In this case the parties recognized intent to kill was at issue and presented all the evidence they could on that issue. Both counsel focused the attention of the jury on that issue in argument. It is therefore clear that the jury was well aware it had to find [defendant] intended to kill in order to find the special circumstance to be true. Moreover, the evidence that [defendant] acted with the intent to kill is overwhelming." (*People v. Winn et al.* (Jul. 12, 1999, B125529) [nonpub. opn.].)

Twenty years after this court's decision on direct appeal, defendant filed a section 1170.95 petition seeking to vacate his murder conviction. The petition asserts defendant was not the murder victim's actual killer, he did not harbor the intent to kill, and he was not a major participant in the murder who acted with reckless indifference to human life. The petition requested the trial court to appoint counsel to assist him.

The trial court denied the petition without appointing counsel. Relying on its review of the "court file," the court reasoned the trial jury was required to find, and necessarily determined in finding the special circumstance true, that defendant had the intent to kill—making him ineligible for Senate Bill 1437 relief.

6

## II. DISCUSSION

*People v. Lewis* holds a trial court must appoint counsel for a section 1170.95 petitioner upon the mere filing of a facially sufficient petition. (*Lewis*, *supra*, 11 Cal.5th at 957; see also section 1170.95, subd. (b)(3).) That was not done here, and under *Lewis*, we accordingly confront undisputed error. The only question, therefore, is whether the error was harmless. The test for that is whether defendant has demonstrated a reasonable probability that in the absence of the error (i.e., the failure to appoint counsel) he would have obtained a more favorable result. (*Id.* at 974.) We believe this reasonable probability exists here and requires a remand. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837 [probability does not mean more likely than not, but merely a reasonable chance, something more than an abstract possibility]; see also *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 668.) Although the impact appointed counsel might make can be difficult to judge counterfactually, we are persuaded there is a reasonable chance counsel can fashion arguments (particularly concerning the permissible use of this court's prior opinion on direct appeal) or proffer new evidence that may lead to a more favorable result. We briefly explain.

The Attorney General's argument for affirmance on harmlessness grounds relies heavily on conclusions another panel of this court drew in resolving defendant's direct appeal over 20 years ago. If counsel were appointed for defendant, however, counsel has available arguments, with a reasonable chance of succeeding, that such reliance is not proper—at least at the prima facie stage of section 1170.95 consideration. (See, e.g., § 1170.95, subd. (d)(3) ["The court may also consider *the procedural history of the case* recited in any prior appellate

7

opinion"], italics added; *Lewis, supra,* 11 Cal.5th at 972 ["Appellate opinions . . . are generally considered to be part of the record of conviction. (See People v. *Woodell* (1998) 17 Cal.4th 448, 454-455[ ].) However, as we cautioned in *Woodell*, the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers'"].) In light of recent changes in the law made by *Lewis* and Senate Bill No. 775 (2020-2021 Reg. Sess.) (which amended section 1170.95, subdivision (d)(3) as quoted above), the Attorney General's related preclusion and law of the case arguments are not well taken. (See, e.g., *People v. Jurado* (2006) 38 Cal.4th 72, 94; *People v. Berg* (2019) 34 Cal.App.5th 856, 875, fn. 20.) In addition, defendant, with the benefit of appointed counsel, has a reasonable chance of availing himself of the provision in section 1170.95 that allows a petitioner to come forward with new evidence not introduced during trial. (§ 1170.95, subd. (d)(3); see also *People v. Murillo* (2020) 54 Cal.App.5th 160, 173, review granted Nov. 18, 2020, S264978 ["If as a matter of law the record of conviction shows . . . that the defendant was a major participant who acted with reckless indifference to human life, *and the defendant does not claim he has new evidence to present*, he has not made a prima facie case"], italics added.)

With these recent changes in the law, we lack the requisite confidence that failure to appoint counsel for defendant, and summary denial of the petition at the prima facie consideration stage, was harmless. We express no view on whether defendant's request for section 1170.95 relief should ultimately carry the day. We hold only that a remand is required to permit appointment of counsel for defendant and further proceedings contemplated by section 1170.95.

## DISPOSITION

The order denying defendant's section 1170.95 petition is reversed and the cause is remanded with directions to appoint counsel for defendant, to permit the filing of an amended section 1170.95 petition if appointed counsel so chooses, and to conduct further proceedings consistent with section 1170.95, subdivision (c).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

I concur:

RUBIN, P. J.

9

People v. Cummings
B299490


MOOR, J., Concurring


     Having considered the arguments included by the parties in their briefs and supplemental letter briefs, I agree with the majority opinion that the correct disposition is to remand the matter to the trial court for appointment of counsel and further proceedings.  I do not join in all the particulars of the majority opinion's analysis.


MOOR, J.