Filed 11/9/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B278663 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA023984) |
| v. | |
| ELIZABETH LOZANO, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge. Dismissed.

Post-Conviction Justice Project, University of Southern California, Gould School of Law, Heidi L. Rummel, Michael J. Brennan, Anna Faircloth Feingold, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.

Prior to a recent amendment to Penal Code section 3051,[1] juvenile homicide offenders who were sentenced to life in prison without the possibility of parole (LWOP), such as defendant and appellant Elizabeth Lozano, would die in prison without the opportunity for a parole suitability hearing.  On October 11, 2017, Governor Brown signed Senate Bill No. 394 (SB 394), which amends section 3051 to expressly provide a youth offender parole hearing to Lozano and others similarly situated, meaning Lozano will receive a parole suitability hearing after 25 years of incarceration. With the amendment to section 3051, Lozano's argument that her LWOP sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment is moot. The appeal is dismissed.

## PROCEDURAL HISTORY

Lozano was sentenced to LWOP in 1996 following her conviction of first degree murder with a robbery-murder special circumstance.  (§§ 187, 190.2, subd. (a)(17).)[2]  She was 16 years old at the time of the commitment offense. In 1997, this court affirmed the judgment as modified, leaving

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] Lozano was also convicted of second degree robbery (§ 211) and the jury found a principal was armed with a firearm (§ 12022, subd. (a)(1)).

intact the LWOP sentence.  (*People v. Lozano* (June 12, 1997, B106665) [nonpub. opn.].)

Fifteen years after Lozano's conviction was affirmed as modified, the Supreme Court decided *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." (*Id*. at p. 479.)  Sentencing of juvenile homicide offenders must take into account "youth (and all that accompanies it)," as well as a juvenile's "diminished culpability and heightened capacity for change." (*Ibid*.)  With the concurrence of the prosecution, Lozano was afforded a new sentencing hearing in 2015 to consider the holding in *Miller*. The trial court again sentenced Lozano to LWOP.  In doing so the court refused to consider Lozano's conduct in prison in the intervening 19 years.  Lozano's initial performance in prison was dismal, including a conviction for conspiracy to transport a controlled substance, but as the years passed her conduct improved significantly, earning Lozano the support of various prison officials.  We reversed on appeal and remanded with directions to the trial court to conduct a new sentencing hearing at which the court would consider Lozano's post-conviction conduct in prison, both good and bad, in determining whether Lozano was "'the rare juvenile offender whose crime reflects irreparable corruption,'" as required by *Miller, supra*, at pages 479–480, in order to justify an LWOP sentence.  (*People v. Lozano* (2016) 243 Cal.App.4th 1126, 1137–1138.)

The trial court held Lozano's third sentencing hearing in 2016. After consideration of briefing, exhibits, victim impact statements, expert testimony, and evidence of a recent violation of prison rules (Lozano's unlawful possession of a cell phone), the court again sentenced Lozano to LWOP.

## DISCUSSION

Lozano contends her LWOP sentence violates the Eighth Amendment. After briefing was complete, we invited the parties to address whether newly enacted section 3051, subdivision (b)(4), renders Lozano's Eighth Amendment claim moot. In accord with the holding in *People v. Franklin*, (2016) 63 Cal.4th 261 (*Franklin*), and the reasoning in *Montgomery v. Louisiana* (2016) 136 S.Ct. 718 (*Montgomery*), we conclude the issue is moot because Lozano is no longer subject to an LWOP sentence.

Prior to the passage of SB 394, Lozano's LWOP sentence meant she was not eligible for a parole suitability hearing. SB 394 amends section 3051 to add subdivision (b)(4) as follows: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole

4

consideration hearing pursuant to other statutory provisions."

We agree with the parties that under SB 394, Lozano is now eligible for parole suitability hearing during her 25th year of incarceration. In our view, this renders Lozano's appeal moot, as her situation is not materially different from that of the defendant in *Franklin*. Franklin, a juvenile homicide offender, "would first become eligible for parole at age 66" under his mandatory 50-year-to-life sentence imposed by the trial court. (*Franklin, supra*, 63 Cal.4th at p. 276.) After Franklin was sentenced, the Legislature enacted section 3051, creating a youth offender parole hearing process. "[S]ection 3051 has superseded Franklin's sentence so that notwithstanding his original term of 50 years to life, he is eligible for a 'youth offender parole hearing' during the 25th year of his sentence. Crucially, the Legislature's recent enactment also requires the Board not just to consider but to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law.' (§ 4801, subd. (c).) For those juvenile offenders eligible for youth offender parole hearings, the provisions of Senate Bill No. 260 are designed to ensure they will have a meaningful opportunity for release no more than 25 years into their incarceration." (*Franklin, supra*, 63 Cal.4th at p. 277.)

As originally enacted, section 3051, subdivision (h), "exclude[d] several categories of juvenile offenders from eligibility for a youth offender parole hearing," including those, like Lozano, "who [were] sentenced to life without parole." (*Franklin, supra*, 63 Cal.4th at pp. 277–278.) The *Franklin* court "express[ed] no view on *Miller* claims by juvenile offenders who are ineligible for such a hearing under section 3051, subdivision (h)." (*Id*. at p. 280.) As now amended, section 3051 expressly affords Lozano, a juvenile homicide offender sentenced to LWOP, a chance to participate in a youth offender parole hearing, which provides "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham v. Florida* (2010) 560 U.S. 48, 75.) This legislative remedy is consistent with the Supreme Court's conclusion in *Graham* that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance" with the commands of the Eighth Amendment for juvenile offenders. (*Ibid.*)

The Supreme Court, in *Montgomery, supra*, 136 S.Ct. 718, employed the same approach as the *Franklin* court did in considering a state's ameliorative efforts to comply with the Eighth Amendment. "Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing

6

them.  See, *e.g.,* Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years).  Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." (*Id.* at p. 736.)

Lozano argues SB 394 does not render moot her contention that the most recent LWOP sentence imposed by the trial court violates the Eighth Amendment.  She contends that although SB 394 may have mooted "the disproportionality concern for juvenile life without parole," "she will face adverse collateral consequences unless the errors in her sentence are corrected."  The only error identified by Lozano is that the trial court did not sentence her to 26 years-to-life (25 years-to-life for first degree murder and the one-year enhancement for use of a weapon by a principle).

Lozano reasons that although she is now entitled to parole hearing after 25 years of incarceration under the procedures established by SB 394, her earliest opportunity for release will be between January and November 2020.  She contrasts those dates to what would have happened if the trial court had imposed a 26-year-to-life sentence instead of LWOP.  Had that lesser sentence been imposed, Lozano calculates that her minimum eligible parole date would have been in December 2012.  Lozano argues that the delay in parole eligibility "affects her meaningful opportunity for

7

release, a constitutional right that the U.S. Supreme Court, and subsequently the California Legislature, has afforded youth offenders."

We need not determine if Lozano's calculations are correct, because her argument rests on the faulty premise that the only remedy for the asserted Eighth Amendment violation is resentencing her to no more than 26-years-to-life for her conviction of first degree murder with special circumstances. *Montgomery*, as we have explained, permits the states to remedy a *Miller* violation by providing meaningful parole consideration—as afforded by SB 394—rather than resentencing. Moreover, the sentence cap of 26-years-to-life urged by Lozano is not required by the Eighth Amendment. (See *People v. Garcia* (2017) 7 Cal.App.5th 941, 949–50 [juvenile sentence of 32 years to life does not violate the Eighth Amendment]; *People v. Perez* (2013) 214 Cal.App.4th 49, 57 [no case has been cited in which a court struck down a juvenile's sentence as cruel and unusual where "the perpetrator still has substantial life expectancy left at the time of eligibility for parole"].)

What Lozano is entitled to under the Eighth Amendment is a prison term that reflects "'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" (*Miller, supra*, 136 S.Ct. at p. 479), while recognizing that "prisoners who have shown an inability to reform will continue to serve life sentences" (*Montgomery, supra*, 136 S.Ct. at p. 736.) The Legislature has made the determination in SB 394 that neither Lozano,

8

nor any other similarly situated California juvenile homicide offender, will face a sentence that possibly runs afoul of the Eighth Amendment as interpreted in *Miller*. The Constitution does not require that Lozano be resentenced or receive any additional reduction in punishment. (*Franklin*, *supra*, 63 Cal.4th at p. 277.)

## DISPOSITION

The appeal is dismissed as moot.


KRIEGLER, Acting P.J.

We concur:



BAKER, J.



DUNNING, J.*

---

* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.