Filed 6/9/21  P. v. Russell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL RUSSELL,<br><br>         Defendant and Appellant. | C089035<br><br>(Super. Ct. No. 06F03704) |

Defendant Daniel Russell was sentenced to life without parole (LWOP) for crimes committed as a minor.  We remanded the case for resentencing in accordance with the guiding principles of *Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407] (*Miller*) and *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*).  (*People v. Pearson* (Sept. 25, 2014, C063484) [nonpub. opn.] (*Pearson*).)  In *Gutierrez*, the California Supreme Court held that the United States Supreme Court's decision in *Miller*, "requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing

1

the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender." (*Gutierrez, supra*, 58 Cal.4th at p. 1361, quoting *Miller, supra*, 567 U.S. at p. 472.)

At the hearing on the remittitur on December 7, 2018, the trial court determined that Russell was not entitled to a resentencing hearing, because Penal Code section 3051, subdivision (b)(4), effective January 1, 2018 (Stats. 2017, ch. 684, § 1.5), provided that juvenile offenders sentenced to LWOP were eligible for a parole hearing after 25 years of incarceration.[1]

Russell contends his right to resentencing was not made moot by section 3051, subdivision (b)(4), because the trial court had originally assumed that LWOP was the presumptive sentence for Russell's crimes and thus did not exercise "informed discretion" in imposing that sentence. We disagree. We remanded the case for the trial court to exercise its sentencing discretion informed by the guiding principles of *Miller* and *Gutierrez*, which require the court to consider " 'distinctive attributes of youth' " in imposing an LWOP sentence. As a result of section 3051, subdivision (b)(4), Russell was not subject to an LWOP sentence at the time of the hearing on the remittitur and the guidance of *Miller* and *Gutierrez* was not applicable.

Russell further contends that even if his claim to an exercise of discretion consistent with *Miller* and *Gutierrez* is moot, the trial court was required to obey the remittitur and resentence him. Russell misreads the scope of the remittitur. We directed the trial court to resentence Russell in accordance with the requirements of *Miller* and *Gutierrez* for imposing LWOP sentences on juvenile offenders. Since, by operation of law, the trial court could not impose an LWOP sentence, the court did not disobey the remittitur in failing to apply *Miller* and *Gutierrez* principles.

---

[1] All undesignated statutory references are to the Penal Code.

However, Russell correctly contends that the trial court erred in declining to order a transfer hearing under Proposition 57, which requires a juvenile court judge to conduct a "transfer hearing" before a minor can be tried in criminal court. The Attorney General concedes this point. (*People v. Delgado* (2018) 27 Cal.App.5th 1092, 1095.)

## FACTS AND PROCEEDINGS

We incorporate by reference the statement of facts from our opinion in *Pearson, supra*, C063484. In sum, Russell and Calvin Pearson targeted and savagely beat to death a partially blind and deaf 90-year-old woman in her home and robbed her of jewelry and money. The jury convicted Russell of first degree murder, first degree residential burglary, and first degree residential robbery with special circumstances. The trial court sentenced Russell to life in prison without the possibility of parole for first degree murder with special circumstances and stayed his sentence on the other counts.

Russell appealed. We held that the record documented that the trial court erroneously believed there was a presumptive sentence of life without parole under section 190.5 for first degree murder with special circumstances committed by a defendant 16 years or older but under 18.[2] Russell was 16 at the time of the crimes. In *Gutierrez*, the California Supreme Court rejected the presumption in favor of LWOP, and

---

[2] Section 190.5, subdivision (b), provides: "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

In *Gutierrez*, the California Supreme Court overruled *People v. Guinn* (1994) 28 Cal.App.4th 1130, which held that LWOP was the presumptive sentence under section 190.5 for 16- or 17-year-old offenders who committed murder with special circumstances. (*Guinn, supra*, at pp. 1141-1142, disapproved in *Gutierrez, supra*, 58 Cal.4th at p. 1387.)

as we said in *Pearson*, required us "to read section 190.5 as giving the trial court discretion, unfettered by any presumption, in deciding whether to impose a life without parole sentence." (*Pearson, supra*, C063484 [at p. 36].)

We rejected the Attorney General's argument that *Miller* did not apply because section 1170, subdivision (d)(2), gave Russell the opportunity to petition the sentencing court for recall and resentencing after serving at least 15 years of his sentence. This same argument was made and rejected in *Gutierrez*. (*Gutierrez, supra*, 58 Cal.4th at pp. 1384-1386.) We noted that the court in *Gutierrez* explained that nothing in *Miller* or its predecessor jurisprudence indicated that an opportunity to recall a sentence in 15 to 24 years did not " 'somehow make more reliable or justifiable the imposition of [an LWOP] sentence and its underlying judgment of the offender's incorrigibility "at the outset." [Citation.]' " (*Pearson, supra*, C063484 [at pp. 37-38], quoting *Gutierrez, supra*, 58 Cal.4th at p. 1386.)

We concluded that the trial court "did not, as the Supreme Court mandated in *Miller*, 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " (*Pearson, supra*, C063484 [at p. 38], quoting *Miller, supra*, 567 U.S. at p. 480.) Nor did we know the extent to which the trial court was influenced by an erroneous presumption in determining Russell's culpability. While we did not fault the trial court for following pre-*Gutierrez* law, we concluded that the court was not aware of the full scope of its discretion under section 190.5 as guided by *Miller*, and Russell was entitled to a sentencing decision made in the exercise of " 'informed discretion.' " (*Pearson, supra*, C063484 [at p. 38], quoting *Gutierrez, supra*, 58 Cal.4th at pp. 1390.) We held that "we are compelled to remand this matter for resentencing in accordance with the guiding principles set forth in *Gutierrez*." (*Pearson, supra*, C063484 [at p. 39].) The disposition stated: "We remand for resentencing in accordance with the principles expressed herein. In all other respects, the judgments are affirmed." (*Id.* [at p. 44].)

4

In the meantime, Senate Bill No. 260 (2013-2014 Reg. Sess.), which became effective January 1, 2014, added section 3051 creating a youth offender parole process. (Stats. 2013, ch. 312, § 4.) Section 3051 provides that a juvenile under the age of 18 at time of his or her crime was entitled to a youth offender parole hearing after 15, 20 or 25 years of incarceration. (Former § 3051, subds. (a) & (b).)

In *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), the defendant, 16 years old at the time he shot and killed another teenager, was sentenced to two consecutive 25-year-to-life terms for a total of 50 years to life in prison. (*Id.* at p. 268.) The defendant argued that his sentence, mandated by statute, was the " 'functional equivalent' " of a term of life without parole, imposed without consideration of his youth as required by *Miller.* (*Id.* at p. 276.) The California Supreme Court rejected the argument, holding that Senate Bill No. 260, "means that [the defendant] is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent. Because [the defendant] is not serving an LWOP sentence or its functional equivalent, no *Miller* claim arises here." (*Franklin, supra*, 63 Cal.4th at pp. 279-280.)

However, former section 3051, subdivision (h), excluded several categories of juvenile offenders from eligibility for a youth offender parole hearing, including juveniles sentenced to LWOP. (*Franklin, supra*, 63 Cal.4th at pp. 277-278.) On October 11, 2017, the Governor signed Senate Bill No. 394 (2017-2018 Reg. Sess.), which amended section 3051, subdivision (b)(4), to expand the youth offender parole process to persons under 18 sentenced to LWOP.

As a result, in *People v. Lozano* (2017) 16 Cal.App.5th 1286, the court held that a *Miller* claim by a juvenile offender sentenced to LWOP is "moot, as [the defendant's] situation is not materially different from that of the defendant in *Franklin.*" (*Id.* at p. 1290.) The *Lozano* court noted that in *Montgomery v. Louisiana* (2016) 577 U.S. ___ [136 S.Ct. 718], the United States Supreme Court held that giving *Miller* retroactive

5

effect " 'does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than resentencing them.' " (*Lozano, supra*, 16 Cal.App.5th at p. 1290; *Montgomery, supra*, 577 U.S. at p. ___ [136 S.Ct. at p. 736] [citing Wyoming statute providing that juvenile homicide offenders are eligible for parole after 25 years].)

At the hearing on December 7, 2018, the trial court observed that this court had issued a remittitur instructing the lower court to resentence Russell based on developments in the law that occurred after he was originally sentenced to LWOP. But since the remittitur there had been legislative enactments and cases interpreting them. Therefore, Russell is "not entitled to a resentencing hearing."

As summarized by defense counsel: "[T]hat issue is now moot because the amendment to Penal Code section 3051 giving juvenile LWOP defendants a parole hearing after 25 years. We were waiting because after 3051 was amended, the Second District Court of Appeal decided People v. Lozano, which also concluded that the amendment makes the resentencing, the Miller violations -- all of that other stuff -- moot because they're going to get a parole hearing. [¶] The California Supreme Court then granted review in Lozano which, again, brought this case to a screeching halt. Subsequently, the California Supreme Court dismissed the grant of review as being moot, which basically makes Lozano good law again. And based upon that, I am of the opinion that there is no longer a Constitutional infirmity with my client having been sentenced to LWOP since he will be getting a parole hearing after 25 years which satisfies the constitutional deficiency. Does that make sense?"

The trial court responded: "It does. And that was the whole issue with respect to Miller."

6

## DISCUSSION

### *Exercise of Discretion in Sentencing*

Russell contends that "[i]t does not matter that new legislation now affords appellant the possibility of parole.  He was entitled to a proper exercise of sentencing discretion when the court made its discretionary sentencing choice in the first instance."  Russell does not articulate what informs a proper exercise of discretion.  However, *Miller*, *Gutierrez*, and our prior opinion in *Pearson* make clear it is the consideration of the characteristics of youth which is required for the trial court to exercise informed discretion in imposing an LWOP sentence of a juvenile offender.  And, as *Franklin* held, that exercise of discretion is not required for any other sentence but LWOP.

In *Miller*, the court said its jurisprudence had established that, for purposes of sentencing, juveniles are constitutionally different from adults and have diminished culpability and greater prospects for reform.  Juveniles lack maturity, have an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk-taking, are more vulnerable to negative influences and outside pressures, and have limited control of their environment and less ability to extricate themselves from horrific crime settings.  (*Miller, supra*, 567 U.S. at p. 471.)  Because their character is not as well formed and less fixed, their actions are less likely to evidence irretrievable depravity.  (*Ibid.*; *Gutierrez, supra*, 58 Cal.4th at p. 1375.)  But penalty schemes such as mandatory LWOP, "prevent the sentencer from taking account of these central considerations.  By removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender."  (*Miller, supra*, 567 U.S. at p. 474.)

In *Gutierrez*, the California Supreme Court held that under *Miller* "imposition of the harshest punishment of a juvenile requires individualized sentencing that takes into

account an offender's 'youth (and all that accompanies it)' . . . ." (*Gutierrez, supra*, 58 Cal.4th at p. 1378, quoting *Miller, supra*, 567 U.S. at p. 479.) *Gutierrez* thus required a trial court to "consider all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller* and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' " (*Gutierrez, supra*, 58 Cal.4th at p. 1390.) The court specified that the sentencing court must consider: (1) "a juvenile offender's 'chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences,' " (2) " 'the family and home environment that surrounds [the juvenile]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional,' " (3) " 'the circumstances of the homicide offense, including the extent of [the juvenile defendant's] participation in the conduct and the way familial and peer pressures may have affected him,' " (4) "whether the offender 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys,' " and (5) evidence or information "bearing on 'the possibility of rehabilitation.' " (*Id*. at pp. 1388-1389.)

The court concluded that "a sentencing court must consider [these] factors . . . before imposing life without parole on a juvenile homicide offender." (*Gutierrez, supra*, 58 Cal.4th at p. 1389.)

We remanded this case because the trial court did not follow the detailed guidance set forth in *Miller* and *Gutierrez* in sentencing Russell to LWOP. We did not remand for the trial court to simply repeat the exercise of discretion generally required in sentencing decisions. Indeed, we noted that "the trial court carefully considered both aggravating and mitigating circumstances as they related to the exercise of its discretion" to impose an alternative 25-year-to-life sentence under section 190.5, subdivision (b). (*Pearson, supra*, C064384 [at p. 38].)

8

As a result of the enactment of section 3051, subdivision (b)(4), by operation of law, Russell has effectively been sentenced to an indeterminate term of 25 years to life, no matter what sentence the trial court originally imposed. Thus, the guiding principles of *Miller* and *Gutierrez* that must inform the discretion of a court sentencing a juvenile offender to LWOP do not apply. Moreover, section 190.5, subdivision (b), provides that the alternative penalty to LWOP for special circumstances murderers 16 and 17 years old is "at the discretion of the court, 25 years to life." Since Russell is now serving this sentence and cannot be sentenced to LWOP, there is no further discretion for the trial court to exercise on remand.[3]

*Scope of Remittitur*

Russell next contends that "[e]ven if the sentencing court believed that statutory amendments mooted or eliminated the need for resentencing, it was still obligated to obey the ruling of the appellant [*sic*] court. The sentencing court was ordered to exercise discretion in resentencing appellant and had not [*sic*] choice but to obey that directive."

"The court may reverse, affirm, or modify a judgment or order appealed from, . . . and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances." (§ 1260.) "The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the

---

[3] Had defense counsel pressed the trial court to resentence Russell in accordance with *Miller* and *Gutierrez* principles, the court would have responded these principles did not apply since Russell was not subject to an LWOP sentence. Therefore, counsel did not render ineffective assistance, as Russell claims, when he conceded the effect of section 3051, subdivision (b)(4), on resentencing. Defense counsel does not render ineffective assistance by failing to take futile actions. (*People v. Memro* (1995) 11 Cal.4th 786, 834; *People v. Price* (1991) 1 Cal.4th 324, 387.)

appellant is entitled." ' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366 (*Dutra*) [on remand "the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*"].)

"The appellate court need not expressly comment on every matter intended to be covered by the disposition. The disposition is construed according to the wording of its directions, as read with the appellate opinion as a whole. [Citation.] . . . [Citation.] [¶] Whether the trial court has correctly interpreted an appellate opinion is an issue of law subject to de novo review. In interpreting the language of a judicial opinion, the appellate court looks to the wording of the dispositional language, construing these directions 'in conjunction with the opinion as a whole.' [Citations.]" (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313.)

In *Dutra*, this court issued a remittitur remanding the case for " 'a sentencing trial.' " (*Dutra, supra*, 145 Cal.App.4th at p. 1363.) Advised by the Attorney General that an intervening California Supreme Court case vitiated the remittitur, the trial judge denied the appellant any further hearing. (*Id.* at p. 1364.) We held that it was the trial court's duty to follow the terms of the remittitur, noting that "the rule requiring a trial court to follow the terms of the remittitur *is jurisdictional* . . . ." (*Id.* at p. 1367.)

Russell relies on *People v. Berg* (2019) 34 Cal.App.5th 856 (*Berg*), as well as *Dutra.* In *Berg*, the trial court granted a prisoner's petition for habeas corpus contending that an LWOP sentence imposed for a crime he committed as a juvenile violated *Miller* and *Gutierrez*. The court ordered the sentence vacated and Berg resentenced. (*Berg, supra*, 34 Cal.App.5th at pp. 862-863.) The People appealed and the appellate court affirmed and issued a remittitur to the trial court. (*Id.* at p. 864.) Based on the enactment of section 3051, subdivision (b)(4), the trial concluded that Berg's claim was moot, vacated its order granting the habeas petition, and reinstated the LWOP sentence. (*Berg, supra*, 34 Cal.App.5th at p. 867.) Notwithstanding *Dutra*, the trial court reasoned that the

appellate court had simply affirmed the order granting the habeas petition and the trial court had inherent authority to reconsider its prior ruling granting the petition.  (*Ibid.*) The appellate court, however, analogized an order granting a habeas petition to a final judgment upheld on appeal, which the lower court had no jurisdiction to reopen or retry, and rejected the lower court's attempt to distinguish *Dutra*.  (*Id.* at pp. 873-877.)  The court held that the order vacating the order granting the habeas petition and reinstating the sentence was void.  (*Id.* at p. 877.)

In this case, the trial court did not materially depart from our directions on remand, let alone reopen or reexamine an order or final judgment affirmed on appeal.  Following the "dictates of *Gutierrez,*" we concluded we were "compelled to remand this matter for resentencing in accordance with the guiding principles set forth in *Gutierrez*."  (*Pearson, supra*, C063484 [at p. 38]; *id.* [at p. 39].)  Unlike *Dutra*, we did not remand for " 'a sentencing trial' " (*Dutra, supra*, 145 Cal.App.4th at p. 1363), but rather for the trial court to apply the principles mandated in *Miller* and *Gutierrez* for imposition of an LWOP sentence on a juvenile offender.  Since the trial court could not sentence Russell to LWOP, the court did not disobey our directions.  Moreover, as discussed, after the enactment of section 3051, subdivision (b)(4), by operation of law, Russell was effectively resentenced to 25 years to life, the alternative to LWOP authorized by section 190.5, subdivision (b).  There was no further discretion for the trial court to exercise in obedience to the remittitur.

*Updating Actual Time Credits*

Russell contends the trial court should have updated the calculation of custody credits when it amended the abstract of judgment to eliminate the parole revocation fine,

11

which, as discussed in *Pearson*, the Attorney General agreed should be stricken.[4] (*Pearson, supra*, C063484 [at p. 43].)

In *People v. Buckhalter, supra*, 26 Cal.4th at page 23, our Supreme Court held that when "an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' (§ 2900.1.)"

The Attorney General argues that the sentence in Russell's case was never modified within the meaning of section 2900.1. We agree that the trial court did not impose a new, recalculated sentence. However, section 2900.5, subdivision (d) states: "It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213." Section 2900.5, like section 2900.1, imposes on the trial court an obligation to give credit for the actual time the defendant has spent in custody and record that time in the abstract of judgment.

Moreover, Russell argues, and the Attorney General concedes, that the amended abstract of judgment contains an error. The "Date Sentence Pronounced" is incorrectly recorded as "06-27-14" when Russell's original sentencing date was November 6, 2009, and the parole revocation fine was stricken on December 7, 2018.

The Attorney General identifies a second error in the amended abstract of judgment, which records "1,299" in the column for local conduct credits as well as the same amount of time in the column for actual time served credits, despite section 2933.2,

---

[4] Russell calculates that he is entitled to an additional 3,319 custody credits for the time served between sentencing on November 6, 2009, and the hearing on remand on December 7, 2018. While the Attorney General does not dispute this calculation, it is the responsibility of the trial court to recalculate custody credits. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.)

subdivision (a), disqualifying a defendant convicted of murder from receiving conduct credit. However, the total credit column records only 1,299 days, indicating that the duplicative conduct credit number is a clerical error.

Since the trial court must issue a new abstract of judgment to correct these errors, we conclude it is consistent with the policy of section 2900.1 and 2900.5 that the actual time Russell served prior to the December 8, 2018 hearing on remand be calculated and set forth in the abstract of judgment, as well.

*Proposition 57*

As noted, Russell was 16 at the time of his crimes. The parties agree that he entitled to conditional reversal and remand to the juvenile court for a transfer hearing under Proposition 57.

California voters passed Proposition 57, the Public Safety and Rehabilitation Act of 2016, intended to change the state law "to require that, before youths can be transferred to adult court, they must have a hearing in juvenile court" and to ensure that minors "accused of committing certain severe crimes would no longer automatically be tried in adult court . . . ." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) analysis of Prop. 57 by the Legis. Analyst, p. 56.)

Welfare and Institutions Code section 707, subdivision (a)(1), requires that an allegation of criminal conduct against any person under 18 years of age must now be commenced in juvenile court. To prosecute the minor under general criminal law, the prosecution must file a motion to transfer the case from juvenile court to adult court. (Welf. & Inst. Code, § 707, subd. (a)(1); *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*).)

In Lara, the California Supreme Court held that Proposition 57 applies retroactively to pending cases to entitle a minor who was charged directly in adult court to a transfer hearing in juvenile court. (*Lara, supra*, 4 Cal.5th at pp. 303-304.) As

13

discussed in *Lara*, the appropriate action is to conditionally reverse Russell's conviction and sentence and remand for a juvenile transfer hearing under Welfare and Institutions Code section 707.

The juvenile court must conduct the hearing as if the prosecutor originally filed a petition in juvenile court and moved to transfer the case against Russell to a court of criminal jurisdiction. (*Lara, supra*, 4 Cal.5th at p. 310; Welf. & Inst. Code, § 707, subd. (a)(1).) If the juvenile court determines that it would have transferred Russell to a court of criminal jurisdiction because he is " 'not a fit and proper subject to be dealt with under the juvenile court law,' " then his convictions and sentence are reinstated. (*Lara, supra*, 4 Cal.5th at p. 310; Welf. & Inst. Code, § 707.1, subd. (a).) If the juvenile court finds that it would not have transferred Russell to a court of criminal jurisdiction, then it shall treat his convictions as juvenile adjudications and " 'impose an appropriate "disposition" within its discretion.' " (*Lara, supra*, 4 Cal.5th at p. 310.)

## DISPOSITION

The judgment is conditionally reversed and remanded to the juvenile court with directions to conduct a transfer hearing in which the court will determine Russell's fitness for treatment within the juvenile system. If, at the hearing, the juvenile court determines it would not have transferred the case to a court of criminal jurisdiction, then Russell's convictions will be deemed to be a juvenile adjudication as of that date. The juvenile court will then conduct a dispositional hearing.

If, at the hearing, the juvenile court determines that it would have transferred Russell to a court of criminal jurisdiction, then the judgment of the court of criminal jurisdiction shall be reinstated as of that date. The court is then directed to prepare an amended abstract of judgment reflecting recalculation of custody credits for the actual time Russell served prior to the hearing on remand on December 7, 2018, the correct date

sentenced was pronounced, and no local conduct credits.  A certified copy of the amended abstract shall be served on the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.


/s/
RAYE, P. J.



We concur:


/s/
MAURO, J.


/s/
DUARTE, J.


15