Filed 8/24/21  P. v. Lauer CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMIE SAM LAUER,<br><br>    Defendant and Appellant. | B307421<br><br>(Los Angeles County<br>Super. Ct No. A148449) |

APPEAL from a postjudgment order of the Superior Court of the County of Los Angeles, Renee Korn, Judge.  Affirmed, in part, reversed, in part, and remanded with directions.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury found defendant Jamie Lauer guilty of, among other crimes, murder and attempted murder, and the trial court sentenced him to life without the possibility of parole.  Those convictions were upheld on direct appeal and in a subsequent habeas proceeding.

Defendant appeals from the trial court's denial of his postjudgment petition for resentencing under Penal Code section 1170.95.[1]  According to defendant, the court erred by concluding, without first issuing an order to show cause and conducting a hearing, that he was ineligible for sentencing relief on his murder conviction.  Defendant also contends that the court erred by refusing to apply section 1170.95 to his attempted murder conviction.  We affirm the denial of defendant's petition as to his attempted murder conviction, but reverse on his murder conviction and remand with instructions.

## II.  FACTUAL BACKGROUND[2]

Defendant and codefendants John Butterfield, Jr., Timothy Walder, and Larry Boone were convicted of crimes that "arose out of an evening-long crime spree on the night of May 22–23, 1981.  [Defendants] were guests at the apartment of Kathleen

---

[1]     All further statutory references are to the Penal Code.

[2]     The facts are taken from the unpublished opinion in the postjudgment writ proceeding in *In re Lauer, et al.* (Jan. 24, 1989, B011500, B014634, B018379) [nonpub. opn.] at pages 2–5 (*Lauer II*).

Williamson and Cassandra Craft. About 10 p.m., Boone announced that he knew how to make some money and would show everyone how. Boone and [defendants] left the apartment and proceeded to the hotel room of [attempted murder victim] Robert Kimberly, an acquaintance of Butterfield. Kimberly invited everyone in for a beer. When the beer ran out, the group proceeded to a liquor store to buy more. After Kimberly purchased the beer, Boone drove to an unlighted area and announced to Kimberly that he was being robbed.

"After knocking out one of Kimberly's teeth, Boone instructed Butterfield to 'drive to the cemetery.' Kimberly pleaded with all four to let him go, promising to get them more money and not to tell anyone what had happened. Walder was heard to say, 'He knows us. We're going to have to kill him.'

"Near the cemetery, everyone got out of the car and Kimberly was relieved of his wallet. He attempted to escape by running down the road but the four managed to overtake him, beat him, and stab him. (Altogether, Kimberly received about eight blows to the head and eighteen stab wounds in his back.) He feigned unconsciousness and heard Walder say, 'That's it, he's had it. He's dead. Let's go.'

"After the four departed, Kimberly managed to walk for about two hours until he was found by a passing motorist and taken to the hospital. He recovered from his wounds and testified at [defendants'] trial.

"After leaving Kimberly for dead, [defendants] and Boone returned to Williamson's apartment with the beer and a wad of bills. They remained only a short time before leaving again.

"They eventually went to the home of [murder victim] Ray Martin, another acquaintance of Butterfield (who had previously

traded his motorcycle to Martin's roommate in exchange for a car). Martin's roommate, Paul Fuller, returned home at about 2:30 a.m. to find the motorcycle lying on its side with the headlight still on, but dimming. Inside his apartment, he found the battered body of Martin, with blood and matted hair splattered on the wall. The coroner's investigator testified at [defendants'] trial that Martin had one stab wound in the chest, seven stab wounds in the upper right quadrant of the back, a deep laceration above and 'into the right eye,' and another deep laceration on the back of the skull, with a skull fracture. This was apparently caused by a hammer, which investigators later found in a vacant lot, covered with blood.

"After leaving Martin's apartment, [defendants] returned to Williamson's apartment, where Williamson noticed that Boone had blood on his pants and Walder had blood on his knife and hands. Later, when Williamson and Butterfield were in bed together, Butterfield made two references to having been at the scene of the crime: 'I saw my Sporty there [the motorcycle] and I wanted to burn it to the ground,' and 'I think that guy is dead.'

"The evidence at trial established that [defendants] had sold tools and guns owned by Martin to a 'fence' for $100. Although Martin had been paid in cash on the day of his murder, his pockets had been turned inside out and all of the cash was missing." (*Lauer II, supra*, at pp. 2–5.)

# III. PROCEDURAL BACKGROUND

Based on the two incidents on May 22 and 23, 1981, defendant and codefendants Butterfield, Walder, and Boone were convicted of the robbery and murder of Martin and the kidnapping, robbery, and attempted murder of Kimberly. (*In re Lauer* (1986) 228 Cal.Rptr. 794, 795, review granted Oct. 30, 1986 (Crim. 25360) (*Lauer I*).) The jury also found true a special circumstance allegation that the murder was committed during the course of a robbery. (*Id.* at p. 795.) All four defendants were sentenced to life imprisonment without the possibility of parole. (*Ibid.*) The convictions were affirmed on appeal in *People v. Boone, et al.* (Crim. No. 42811).[3] (*Lauer I, supra*, 228 Cal.Rptr. at p. 795.)

Defendant, Butterfield, and Walder filed separate petitions for writs of habeas corpus, contending that the special circumstance finding should be set aside under *Carlos v. Superior Court* (1983) 35 Cal.3d 131 (*Carlos*) (overruled, in part, in *People v. Anderson* (1987) 43 Cal.3d 1104, 1115 (*Anderson*)) because the jury was not instructed that proof of intent to kill or aid in the killing was essential to a finding of murder with special circumstances. (*Lauer I, supra*, 228 Cal.Rptr. at p. 794, fn. omitted.) On July 31, 1986, the court issued a published opinion granting the habeas petitions under *Carlos* and setting aside the special circumstance findings and the life without the possibility of parole sentences. (*Lauer I, supra*, 228 Cal.Rptr. at p. 797.) The Supreme Court, however, granted review as to each matter

---

[3] The unpublished opinion in the consolidated direct appeals from the judgments of conviction is not in our record, and the parties agree that it is unavailable.

and remanded to the appellate court for reconsideration under *Anderson, supra*, 43 Cal.3d 1104 (superseded by statute as stated in *People v. Odom* (2016) 244 Cal.App.4th 237, 251) and *People v. Olde* (1988) 45 Cal.3d 386 (*Olde*) (overruled on other grounds as stated in *People v. Prieto* (2003) 30 Cal.4th 226, 256).[4]  (*Lauer II, supra*, at p. 2.)

On remand, the court issued an unpublished opinion, *Lauer II*, which reconsidered the habeas petitions under *Chapman, supra*, 386 U.S. 18.  (*Lauer II, supra*, at pp. 2, 8–9.)  The court observed that the evidence at trial "placed all four defendants at the scene of Martin's murder.  The murder was committed in a manner which strongly suggested that it was a group effort.  Unfortunately, the evidence did not reveal which members of the group participated in the actual killing."  (*Id.* at p. 7.)  The court then concluded that the trial court's error in instructing the jury was harmless because "[f]irst, [defendants] attempted unsuccessfully to present a diminished capacity defense, indicating their recognition that the issue of their state of mind at the time of the crimes was of some importance.  Second, the nature of the crimes charged was such that 'no rational jury could find' that [defendants] committed the crimes charged but did so without intending to kill."  (*Id.* at p. 8.)  Because "[t]he parties recognized that intent was an issue, and the record not only establishes the necessary intent as a matter of law, but shows the

---

[4]     *Anderson, supra*, 43 Cal.3d at pages 1128 through 1129 and *Olde, supra*, 45 Cal.3d at pages 413 through 414 held that error which implicates federal constitutional rights, including instructional error, must be reviewed under the beyond-a-reasonable-doubt harmless error standard in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

contrary evidence not worthy of consideration[,]" the court denied the habeas petitions. (*Id.* at pp. 8–9.)

On January 9, 2019, defendant filed a petition for resentencing under section 1170.95. The prosecution filed an initial opposition in June 2019 which attached a copy of *Lauer II*, and defendant, with the assistance of appointed counsel, filed a reply. Following further briefing by both parties, the trial court held a hearing on August 6, 2020, and denied the petition on the grounds that (1) defendant failed to make a prima facie showing of eligibility for relief because the evidence established that he was a direct aider and abettor in the murder and (2) under *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 (*Galvan*), the special circumstance finding barred him from resentencing relief unless and until he first obtained habeas relief from that finding.

The next day, the trial court issued a minute order confirming its denial of the petition, finding that "[g]iven the events surrounding the attempted murder of Kimberly, it defies credulity that [defendant] went with the same three accomplices to Martin's apartment a short time later without full knowledge that they were going to murder Martin, who was also an acquaintance and could identify participants if not murdered. As the court of appeal[ ] stated [in *Lauer II*], 'no rational jury could find' a lack of intent to kill by [defendant] and his accomplices when they went to Martin's apartment to rob him." The court also cited *Galvan, supra*, 52 Cal.App.5th 1134 and concluded that because the jury had found the special circumstance allegation to be true, defendant was ineligible as a matter of law to have his murder sentence vacated under section 1170.95.

7

Defendant timely filed a notice of appeal from the order denying his section 1170.95 petition.

## IV. DISCUSSION

### A. *Section 1170.95*

"Senate Bill [No.] 1437 [(Senate Bill 1437)] was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability. Senate Bill 1437 also adds . . . section 1170.95, which allows those 'convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . .' (§ 1170.95, subd. (a).)

"An offender may file a petition under section 1170.95 where all three of the following conditions are met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted

a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection[s] 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a)(1)–(3).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).)

Where a petitioner files a section 1170.95 petition that contains all the statutorily required information and requests counsel, the trial court must appoint counsel and order briefing. (*People v. Lewis* (2021) 11 Cal.5th 952, 960–971 (*Lewis*).) The court then evaluates whether the petitioner made a prima facie showing that he is eligible for relief. (*Id*. at p. 960.) In making this evaluation, a court may rely on the record of conviction, which generally includes appellate opinions. (*Id*. at pp. 971–972.) "However, as [our Supreme Court] cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 454–455], the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' (*Id*. at p. 457.) In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 980.) . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at p. 972.)

If the petitioner has made a prima facie showing, the trial court "shall issue an order to show cause." (§ 1170.95, subd. (c).) "The trial court must then hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been

sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) . . . Significantly, if a hearing is held, '[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) '[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' ([*Ibid*].) 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' ([*Ibid*].)" (*Martinez, supra*, 31 Cal.App.5th at pp. 723–724.)

B.     *Murder Conviction*

Defendant contends, among other things, that (1) the trial court erred by weighing the evidence at the prima facie inquiry stage of the resentencing proceeding and (2) the harmless error finding in *Lauer II* based on the prior record of conviction should not preclude sentencing relief because section 1170.95, subdivision (d)(3) permits both defendants and the prosecution to introduce new or additional evidence on the issues of whether defendant acted with the requisite intent to kill or was a major participant who acted with reckless indifference to human life. The Attorney General does not contest these assertions of error, but argues instead that the court's denial of the petition can be upheld under two different legal theories not articulated by the court, namely, the doctrines of issue preclusion and law of the case.

10

We reject the Attorney General's contention that the trial court's denial should be affirmed under the doctrines of collateral estoppel and law of the case because the issue of defendant's intent to kill was previously adjudicated against him in *Lauer II*. In our view, giving preclusive effect to the appellate opinion in *Lauer II* at this preliminary stage would be inconsistent with our Supreme Court's recent opinion in *Lewis* that the bar at the prima facie stage is intentionally low and appellate opinions, although probative on a particular issue, do not necessarily "'supply all [the] answers.'" (*Lewis, supra*, 11 Cal.5th at p. 972.)[5]

In the *Lauer II* habeas proceeding, the Supreme Court directed the Court of Appeal to determine whether the trial court's failure to instruct the jury that proof of an intent to kill was essential to a special circumstance finding constituted prejudicial error under *Chapman, supra*, 386 U.S. 18. On remand, the Court of Appeal in *Lauer II* determined that the instructional error was harmless because no rational jury could have found that defendant committed the charged crimes, "but did so without intending to kill." This conclusion does not demonstrate, as a matter of law, that defendant cannot meet his prima facie burden to show that he could not be convicted of murder under the amendments to sections 188 and 189, i.e., that he did not act with the intent to kill and was not a major participant in the robbery who acted with reckless indifference to human life. Indeed, at the section 1170.95, subdivision (d)(3) hearing, the parties will be permitted to introduce new evidence and arguments for the trial court's consideration. (§ 1170.95, subd. (d)(3); *People v. Smith* (2020) 49 Cal.App.5th 85, 95, review

_____

[5]  We note that the trial court did not have the benefit of the guidance provided by *Lewis, supra*, 11 Cal.5th 952.

11

granted July 22, 2020, S262835 (*Smith*).) Thus, unlike *Lauer II*, in which the appellate court's review was limited to the record of conviction and any rational inferences to be drawn therefrom, the trial court in the section 1170.95, subdivision (d)(3) hearing is not necessarily so limited.

We therefore agree with defendant that the trial court erred by weighing the evidence and engaging in fact finding prior to issuing an order to show cause and holding a hearing at which the parties would be permitted to submit additional evidence and arguments on whether defendant was entitled to resentencing on his murder conviction. (See *Lewis, supra*, 11 Cal.5th at pp. 971–972; *Smith, supra*, 49 Cal.App.5th at p. 95.) We also conclude that the court erred in finding that the jury's special circumstances finding, made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 were decided, prevented defendant from making a prima facie showing that he was entitled to relief. (*People v. York* (2020) 54 Cal.App.5th 250, 257–263, review granted Nov. 18, 2020, S264954; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011; *Smith, supra*, 49 Cal.App.5th at pp. 93–94.)

D.      *Sentence on Attempted Murder*

Defendant also contends that the trial court erred by denying his section 1170.95 petition on his attempted murder conviction. He acknowledges that courts are divided on the issue of whether section 1170.95 applies to attempted murder,[6] but

---

6       In *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175 (*Lopez*) and *People v.*

argues the cases holding that section 1170.95 does not apply to attempted murder were wrongly decided.

In light of the express language of section 1170.95, we follow the decisions in *Lopez, supra*, 38 Cal.App.5th 1087 and *Munoz, supra*, 39 Cal.App.5th 738 and conclude that the trial court did not err by concluding that defendant had not met his prima facie burden to show that his attempted murder conviction was based on an offense that was eligible for relief under section 1170.95.

---

*Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234 (*Munoz*), the courts held that defendants convicted of attempted murder under the natural and probable consequences doctrine are not eligible for section 1170.95 relief.

## V.    DISPOSITION

That portion of the order denying the petition for resentencing on defendant's murder conviction under section 1170.95 is reversed and remanded with instructions to conduct further proceedings under section 1170.95.  In all other respects, the order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.